United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued April 10, 2000 Decided June 2, 2000 

 No. 99-3141

 United States of America, 
 Appellant

 v.

 Dennis Hall, 
 Appellee

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 98cr00435-01)

 Thomas J. Tourish, Jr., Assistant U.S. Attorney, argued 
the cause for appellant. With him on the briefs were Wilma 
A. Lewis, U.S. Attorney, and John R. Fisher and Anne 
Pings, Assistant U.S. Attorneys.

 Sara E. Kopecki argued the cause and filed the brief for 
appellee.

 Before: Edwards, Chief Judge, Henderson and Rogers, 
Circuit Judges.

 Opinion for the Court filed by Chief Judge Edwards.

 Edwards, Chief Judge: Appellant, the United States, raises 
only one question on this appeal: Did the District Court have 
jurisdiction to grant a motion for a new trial nunc pro tunc 
(which literally means "now for then") in order to circumvent 
the time limitations of Federal Rule of Criminal Procedure 
33? Rule 33 provides that a motion for a new trial must be 
filed "within 7 days after the verdict or finding of guilty or 
within such further time as the court may fix during the 7-
day period" (emphasis added). There is no dispute that the 
District Court did not actually grant Mr. Dennis Hall's mo-
tion for an extension of time within 7 days after a jury found 
appellee Hall guilty of possessing a firearm and ammunition 
after a felony conviction in violation of 18 U.S.C. s 922(g) 
(1994) and of possessing marijuana in violation of 21 U.S.C. 
s 844(a) (1994) on May 5, 1999. Mr. Hall filed his motion for 
an extension of time on May 14, 1999, within 7 days after the 
verdict; but the trial court did not respond to that motion 
until after the 7 days had passed. Mr. Hall subsequently 
filed a motion for a new trial on June 10, 1999; this filing was 
within the time limit set by the District Court when it 
eventually granted Mr. Hall's motion for an extension of time. 
The sole controversy in this case is whether the District 
Court had the authority to avoid Rule 33's time limit--that is, 
whether the court was authorized to wait until June 3, 1999, 
almost one month after the jury verdict, before granting Mr. 
Hall's motion for an extension and then back-date its decision 
nunc pro tunc to May 14, 1999 to satisfy Rule 33's time 
requirements.

 We agree with the Government that the District Court 
erred. The District Court's nunc pro tunc order was a 
nullity. We also reject any suggestion that Mr. Hall was at 
the mercy of the District Court, for there was no reason that 
Mr. Hall could not have filed a motion for a new trial within 
Rule 33's 7-day time period. Counsel could not provide such 
a reason at oral argument, and we can discern none. Finally, 

we reject as specious Mr. Hall's claim that the District 
Court's pre-verdict ruling, deferring consideration of the de-
fendant's objection to the prosecutor's closing argument, nec-
essarily transformed the defendant's pre-verdict motion to 
one for a new trial or mistrial. We therefore reverse the 
District Court's judgment.

 I. FACTS

 Mr. Hall's jury trial commenced on May 3, 1999. On May 
5, 1999, the jury found Mr. Hall guilty on one count of 
possession of a firearm and ammunition by a convicted felon 
and one count of possession of marijuana. Seven business days 
after the jury's verdict, on May 14, 1999, Mr. Hall filed a 
timely motion for an extension of time alleging that the 
prosecution had continually and impermissibly emphasized 
Mr. Hall's status as a convicted felon during its rebuttal 
argument.

 Despite Rule 33's clear prescription that a court may only 
grant an extension "within such further time as the court may 
fix during the 7-day period" after the verdict or finding of 
guilty, the District Court chose to hold Mr. Hall's motion in 
abeyance to allow the Government to respond. On June 3, 
1999, after it became clear that the Government did not 
intend to respond, the District Court granted Mr. Hall's 
motion nunc pro tunc to May 14, 1999 and authorized Mr. 
Hall to file a motion for a new trial on or before June 10, 
1999. Mr. Hall met the new deadline.

 On July 9, 1999, the Government filed an opposition, argu-
ing that the District Court lacked jurisdiction under Rule 33 
to consider the motion for a new trial. In particular, the 
Government challenged the District Court's attempt to cir-
cumvent Rule 33's time requirement by resorting to nunc pro 
tunc relief. On October 1, 1999, the District Court granted 
Mr. Hall's motion for a new trial, finding that "[t]o penalize 
the defendant for the Court's delay in granting the motion, 
which delay resulted from an effort of the Court, sua sponte, 
to protect the government's right to respond, would be mani-
festly unjust, if not an unconstitutional violation of the due 

process clause." United States v. Hall, No. 98-435-LFO, 
Mem. Op. at 4 (D.D.C. Nov. 4, 1999) ("Mem. Op."). This 
appeal followed.

 II. ANALYSIS

A. Standard of Review

 Motions for new trials that implicate jurisdictional issues 
are reviewed de novo. See United States v. Torres, 115 F.3d 
1033, 1035 (D.C. Cir. 1997) ("Although we typically review 
denials of new trial motions for abuse of discretion, because 
the district court dismissed Torres's motion on jurisdictional 
grounds, our review is de novo." (internal citations omitted)).

B. Jurisdiction

 The District Court's actions are clearly proscribed by the 
Supreme Court's decision in Carlisle v. United States, 517 
U.S. 416 (1996), a case that the District Court's opinion fails 
to mention. In Carlisle, the Court considered whether a 
district court had authority to grant a post-verdict motion for 
judgment of acquittal filed just one day outside of the time 
limit prescribed by Federal Rule of Criminal Procedure 29(c). 
Rule 29(c) provides, in relevant part, that "[i]f the jury 
returns a verdict of guilty ..., a motion for judgment of 
acquittal may be made or renewed within 7 days after the 
jury is discharged or within such further time as the court 
may fix during the 7-day period." Fed. R. Crim. P. 29(c). It 
is true that the petitioner in Carlisle, unlike Mr. Hall, filed an 
untimely motion. This factual distinction is not cause for 
much concern, however, because like Mr. Hall, the petitioner 
in Carlisle argued that district courts should have the discre-
tion to step outside of the Rules' strict time limits, and it is 
this latter assertion upon which the Carlisle Court ultimately 
focused. In particular, the Court read Rule 29(c) in conjunc-
tion with Rule 45(b), which provides that, absent a showing of 
excusable neglect, "the court may not extend the time for 
taking any action under Rules 29, 33, 34 and 35, except to the 
extent and under the conditions stated in them." Fed. R. 
Crim. P. 45(b). This language convinced the Court that, 

because "[t]hese rules are plain and unambiguous ... 
[, t]here is simply no room in the text of Rules 29 and 45(b) 
for the granting of an untimely postverdict motion of acquit-
tal...." Carlisle, 517 U.S. at 421. The Court therefore 
concluded that the text of the relevant Rules did not autho-
rize district courts to circumvent Rule 29's time limits.

 The Court also considered and rejected petitioner's argu-
ment that, in the absence of textual support from the Rules 
themselves, courts retain limited "inherent supervisory au-
thority" to depart from the Rules' strict time limits. In 
advancing this argument, the petitioner in Carlisle relied on 
United States v. Hasting, 461 U.S. 499 (1983), where the 
Court held that courts "may, within limits, formulate proce-
dural rules not specifically required by the Constitution or the 
Congress." Id. at 505. The Carlisle Court read the decision 
in Hasting very narrowly, however, holding that "[w]hatever 
the scope of this 'inherent power,' ... it does not include the 
power to develop rules that circumvent or conflict with the 
Federal Rules of Criminal Procedure." Carlisle, 517 U.S. at 
426. In other words, as a general principle, when the text of 
a rule is clear, it must be enforced as written. The Court 
allowed that a failure to meet a prescribed time limit might 
be excused in "the 'unique circumstances' that the cause of 
the failure to meet the Rule's deadline was an erroneous 
ruling or assurance by the District Court itself." Id. at 428. 
At bottom, however, Carlisle says that "[t]he case law of [the] 
Court ... does not establish any 'inherent power' to act in 
contravention of applicable Rules." Id.

 In the present case, Rule 33 is unambiguous. The Rule 
means what it says: A court can only extend the time in 
which to grant a motion for a new trial if a court fixes such a 
time within 7 days of the verdict or finding of guilty. Rule 
45(b) resolves any possible ambiguity by noting that a district 
court's authority to extend time is limited "to the extent and 
under the conditions stated" in Rule 33. Fed. R. Crim. P. 
45(b).

 We recognize that a trial court may exercise "long ... 
unquestioned" "inherent power" in the enforcement of Rules, 

but such a power may only be exercised when it does not run 
afoul of an express and unambiguous Rule to the contrary. 
Carlisle, 517 U.S. at 426. The "long ... unquestioned" power 
caveat therefore has no application in this case, because Rule 
33 is absolutely clear in its terms.

 The District Court in this case sought to justify its disputed 
action by suggesting that it would be fundamentally unfair to 
reject Mr. Hall's untimely motion:

 To penalize the defendant for the Court's delay in grant-
 ing the motion, which delay resulted from an effort of the 
 Court, sua sponte, to protect the government's right to 
 respond, would be manifestly unjust, if not an unconstitu-
 tional violation of the due process clause.
 
Mem. Op. at 4. We disagree. Indeed, the defendant does 
not even contend that the District Court somehow erred in 
failing to respond to the motion for extension of time within 
the 7-day period. This is not surprising, because nothing in 
Rule 33 compels a district court to respond to a motion for an 
extension of time within the 7-day time limit; the Rule 
merely provides that after the 7-day window has closed, a 
district court is without jurisdiction to grant an extension of 
time. Thus, although the trial court's decision to delay its 
decision did not violate any law, its decision to grant an 
extension of time after the 7-day window had closed neces-
sarily abrogated Rule 33 and was thus impermissible.

 Furthermore, there was no reason why Mr. Hall could not 
have filed a motion for a new trial within Rule 33's 7-day time 
limit. At oral argument, counsel offered no explanation for 
this oversight, and we can discern none.

 Finally, Mr. Hall argues that the District Court effectively 
converted a defense objection into a motion for a new trial 
when the trial judge addressed the parties before the case 
was submitted to the jury. Following closing argument by 
Mr. Hall's attorney, the prosecutor, in rebuttal, warned the 
jury not to allow Mr. Hall's attorney to get away with playing 
a "race card." Mem. Op. at 7. Mr. Hall's attorney objected 
and requested the trial judge to instruct the jury to disregard 

the prosecutor's rebuttal. The judge, however, said that he 
was "not going to get into this. The jury will sort this out 
and I'll consider it after we have a verdict." Id. at 8. Mr. 
Hall argues that this statement by the judge necessarily 
converted the defendant's motion to one for a new trial or 
mistrial. This is a specious claim. The District Court never 
suggested this ground as a basis for the relief afforded Mr. 
Hall; rather, the court granted Mr. Hall's motion for an 
extension of time nunc pro tunc. Furthermore, Mr. Hall's 
own actions demonstrate the baselessness of his reading of 
the District Court's statements; if Mr. Hall were so certain 
that his pre-verdict motion had been converted to a motion 
for a new trial or mistrial, there would have been no need for 
him to file a motion for an extension of time in which to file a 
motion for a new trial. The simple truth is that the District 
Court acted on an untimely motion for a new trial, something 
that it had no authority to do under Rule 33.

 III. CONCLUSION

 For the foregoing reasons, the District Court was without 
jurisdiction to grant Mr. Hall's motion for an extension of 
time nunc pro tunc. We therefore reverse the judgment of 
the District Court.